PHILIP PENNYWIT AND CHARLES G. SCOTT v. SHELDON I. KELLOGG AND JOHN T. FOOTE.

In November, 1861, the relation existing between the people and State of Ohio, and the people and State of Arkansas, one of the Confederate States then waging war against the United States, was that of enemies, and the judicial proceedings under such Confederate State Government do not fall within section 1 of article 4 of the Constitution of the United States, which provides that "full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State."

The record of a judgment rendered in a court of such Confederate State of Arkansas, in November, 1861, against a citizen of the State of Ohio, is not competent evidence of indebtedness, although it may purport to show that process was served on the defendant prior to the commencement of the war.

Reserved from Special Term.

The case is fully stated in the opinion of the court.

*King, Thompson & Avery,* for plaintiffs.

*W. Y. Gholson; McGuffey, Morrill & Strunk,* and *George Hoadly,* for defendants.

TAFT, J. This action was brought upon a judgment in a suit commenced in Arkansas by the plaintiffs against the defendants, Kellogg and Foote, who were residents of Cincinnati before the war, and prosecuted to judgment during the war. The judgment was rendered on the 16th November, 1861. It appears from the pleadings and evidence, that Arkansas was engaged in the war against the United States at that time, and that the court which rendered this judgment, was a part of the Confederate State Government which was assisting to carry on the war.

The true relation, at that time existing between the people of any of the States in rebellion to the people of the loyal States, was determined in the Prize Cases, 2

Black's Reports, 635. The decision was made in 1862, and turned upon the condition of things as existing in the summer of 1861, when the seizures of prizes were made, but a few months prior to the rendition of the judgment of Pennywit against Kellogg and Foote. This was even before the Act of Congress of July 13, 1861, ratifying the President's proclamation, and prohibiting all commercial intercourse except by permission of the President. Judge Grier, in giving the opinion of the court in the Prize Cases, stated the facts as well as the principle of law, which applied to and defined the condition of the people of the rebel States at that time.

The condition was held to be that of well-defined civil war, and the States in rebellion were at war with the other States and the United States; and the people of rebel States were to be deemed enemies of the people of the loyal States. On page 669, the court say: "It is not the less a civil war with belligerent parties in hostile array, because it may be called an 'insurrection' by one side, and the insurgents be considered as rebels or traitors. It is not necessary that the independence of the revolted province or State be acknowledged in order to constitute it a party belligerent in a war, according to the law of nations."

The court, p. 673, define the situation thus:

"Under the very peculiar Constitution of this Government, although the citizens owe supreme allegiance to the Federal Government, they owe also a qualified allegiance to the State in which they are domiciled. Their persons and property are subject to its laws.

"Hence, in organizing this rebellion, they have *acted as States* claiming to be sovereign over all persons and property within their respective limits; and asserting a right to absolve their citizens from their allegiance to the Federal Government. Several of these States have combined to form a new confederacy, claiming to be acknowledged by the world as a sovereign State. Their right to do so is

now being decided by wager of battle. The ports and territory of each of these States are held in hostility to the General Government. It is no loose, unorganized insurrection, having no defined boundary or possession. It has a boundary marked by lines of bayonets, and which can be crossed only by force—south of this line is enemies' territory, because it is claimed and held in possession by an organized, hostile, and belligerent power.

"All persons residing within this territory whose property may be used to increase the revenues of the hostile power are, in this contest, liable to be treated as enemies, though not foreigners. They have cast off their allegiance and made war on their Government, and are none the less enemies because they are traitors."

It matters not, that no State can take itself out of the Union. When they choose to wage war on the General Government, and that portion of territory which is loyal to the General Government, they, both the hostile State and its people, are subject to the disabilities of enemies. They can not claim that the record of their judicial or other proceedings is entitled to faith and credit under the Federal Constitution, against which they are at war.

The rights under all contracts between people of hostile countries are suspended during the war. They may not be ultimately lost. But in time of war, they are not available. The result of the relation existing between the people of Arkansas and the people of Ohio is, that this judgment, rendered in time of war against a resident and citizen of Ohio, can not have any force in Ohio.

It ought not to have force, because the defendant could not lawfully defend in Arkansas. To allow a judgment to stand, under such circumstances, would violate the fundamental principle that every defendant must have his day in court. For although this defendant was served with process and appeared before the war, yet no man can be said to have his day in court, who has not the opportunity to continue in court till the trial and judgment. The

moment the state of war existed between Arkansas and the United States, it existed between all the people of Arkansas and all the people of Ohio, and no citizen of Ohio had any standing in any court in Arkansas. If the defendant had gone there, he would have been liable to imprisonment as an enemy in Arkansas, and to be punished by his own Government as violating its laws if he had attempted business intercourse in that State.

This we regard as the undoubted result of the adjudications of the Supreme Court of the United States and of other courts, in regard to the relation of the people of the rebel, to those of the loyal States during the war. (*Texas* v. *White,* 7 Wal. R. 727, 734.) In *Hanger* v. *Abbott,* 6 Wal. R. 532, it was decided "that the time during which the courts in the lately rebellious States were closed to citizens of the loyal States is, in suits brought by them since, to be excluded from the computation of the time fixed by the statute of limitations." The opinion of the court states the principle clearly, that the commencement of the war suspended all contracts and all remedies for the enforcement of contracts between enemies, or between the citizens of countries at war. The court say, pp. 540, 541, that "the suspension of the remedy during war is so absolute, that courts of justice will not even grant a commission to take testimony in an enemy's country." Lord Coke says, "*silent leges inter arma,*" and adds, "that if a man is disseized in time of peace, and the descent is cast in time of war, this shall not take away the entry of the disseizee;" p. 541. The court say, p. 540, "Ability to sue was the status of the creditor when the contract was made, but the effect of war is to suspend the right, not only without any fault on his part, but under circumstances which make it his duty to abstain from any such attempt. His remedy is suspended by the acts of the two governments, and by the law of nations, not applicable at the date of the contract, but which come into operation in consequence of an event over which he has no control."

It is very clear that such a judgment must be regarded as *ex parte* and void. The original rights of the plaintiff, however, are not lost. If he has a cause of action against the defendant he can prosecute it. But this *ex parte* judgment can not be received in evidence against the defendant in Ohio.

If the plaintiff desires to try the merits of his original claim, we may entertain a motion to amend, and he may found his petition on that as his cause of action.

Judgment for defendant.